NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF THE VIRGIN ISLANDS
## ST. CROIX DIVISION

Bevron GOODWIN, individually, and on
behalf of all other persons born in and residing
in the U.S. Virgin Islands,

                                                    Civ. No. 1:11-106

                  Plaintiff,
                                                    OPINION

v.

U.S. FEDERAL ELECTION COMMISSION,
U.S. ELECTION ASSISTANCE
COMMISSION, FEDERAL VOTING
ASSISTANCE PROGRAM, U.S.
COMMISSION ON CIVIL RIGHTS, U.S.
DEPARTMENT OF JUSTICE, CIVIL
RIGHTS DIVISION, and U.S.
DEPARTMENT OF JUSTICE, OFFICE OF
INSULAR AFFAIRS,

                  Defendants.

### THOMPSON, U.S.D.J.[1]

        This matter has come before the Court on two separate Motions to Dismiss [docket #s 4,

6] filed by the Defendants the United States Federal Election Commission ("FEC"),[2] the United

States Election Assistance Commission, Federal Voting Assistance Program, the United States

Commission on Civil Rights, the United States Department of Justice, Civil Rights Division, and

the United States Department of the Interior Office of Insular Affairs (all Defendants

collectively, "the Defendants" or "the Government"). Plaintiff Bevron Goodwin opposes these

motions [10, 11]. The Court has considered the parties' submissions and has reached a

---

[1] The Hon. Anne E. Thompson, United States District Judge for the District of New Jersey, sitting by designation.
[2] The FEC has independent litigation authority. As such, the FEC is represented by its own general counsel, while
all other Defendants are represented by the Department of Justice.

1

determination without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the following reasons, Plaintiff's Complaint will be dismissed.

## I.    BACKGROUND

Plaintiff's Complaint in this matter touches upon one of the most fundamental rights to citizenship—the right to vote. This is not the first time this Court has addressed the issue of voting rights for American citizens living in the Virgin Islands. *See, e.g., Ballentine v. United States*, No. 1999-130, 2006 U.S. Dist. LEXIS 96631 (D.V.I. Sept. 21, 2006), *aff'd by and adopted by*, 486 F.3d 806 (2007) [hereinafter *Ballentine II*]. Just over a decade ago, the Honorable Thomas K. Moore recounted the political history between the United States and the Virgin Islands in considerable detail. *See Ballentine v. United States*, No. 1999-130, 2001 U.S. Dist. LEXIS 16856, at *3–18 (D.V.I. October 15, 2001) [hereinafter *Ballentine I*]. Furthermore, this Court in *Ballentine II* rejected a vote-rights challenge in a case very similar to the case now pending before the Court. Therefore, the history of voting rights for American citizens living in the Virgin Islands need not be recounted at length here.

In short, the Virgin Islands were purchased by the United States from Denmark in 1917 for $25 million. *Id.* at *3. At the time of acquisition, Congress continued the "semi-autonomous, fully organized system of government" that existed in the Virgin Islands while under Danish rule. *Id.* at *8. Then, in 1936, acting pursuant to the Territorial Clause of Article IV of the United States Constitution, Congress enacted the Organic Act of 1936. *Id.* at *12. The Territorial Clause provides Congress the authority "to dispose of and make all needful Rules and Regulations respecting the Territory or other property belonging to the United States." U.S. CONST. art. IV, § 3, cl. 2. With the Organic Act, Congress intended "to provide a civil government for the Virgin Islands." *Id.* (quoting Organic Act of 1936, 49 Stat. 1807). Eighteen years later, in 1954, Congress adopted the Revised Organic Act, 48 U.S.C. § 1541, *et seq.*, which

2

is still in effect today. The Revised Organic Act is "the Virgin Islands equivalent of a constitution." *Brow v. Farrelly*, 994 F.2d 1027, 1032 (3d Cir. 1993) (citations omitted).

The Virgin Islands currently holds the status of an unincorporated territory of the United States; it does not have full statehood. *See Smith v. Gov't of the V.I.*, 375 F.2d 714, 718 (3d Cir. 1967). Despite being an unincorporated territory, Congress has granted citizenship to all persons born in the Virgin Islands and subject to its jurisdiction. *See* 8 U.S.C. § 1406. Regardless of citizenship, however, United States citizens residing in the Virgin Islands cannot vote for President. *See* U.S. Const. art. II, § 1, cl. 2. Furthermore, although Virgin Island residents send delegates to the United States Congress, the Virgin Islands congressional delegation does not have voting privileges. *See* 48 U.S.C. § 1711.

Plaintiff contends in his Complaint that "[t]he reason Virgin Islanders were denied the right to vote and the right to run for federal office is due to the prejudiced, racist, and bigoted rationale of a number of dated Supreme Court cases known as the *Insular Cases*." (Compl. ¶ 14). It is the alleged racist and imperialist history surrounding the *Insular Cases*, along with the lasting effects of this history, which underpins Plaintiff's claims. Plaintiff further argues, among other things, that residents of the Virgin Islands have been continually and purposefully denied the right to vote for President of the United States and to have voting members sit in the United States Congress because, were the Virgin Islands and its citizens fully enfranchised on a federal level, it would be the first majority black jurisdiction. This racism, according to Plaintiff, has paralyzed all branches of the federal government from affording Virgin-Island-resident American citizens the elective franchise.

Plaintiff, in his Complaint, asks the Court for three forms of relief. First, Plaintiff asks for an injunction preventing the removal of this case from the Virgin Islands Superior Court to federal court. The contention that this Court cannot hear the pending case is frivolous. Removal

3

is proper pursuant to 28 U.S.C. §§ 1441 and 1442. A plaintiff does not have the unilateral power to deprive a court of removal jurisdiction when it is otherwise proper. Moreover, Plaintiff has also apparently abandoned this claim in his opposition brief. This issue, therefore, will not be discussed further. Second, Plaintiff asks for an award of damages, including punitive damages, from the Defendants for denying his right to vote for certain federal officials in violation of the Equal Protection Clause and the Due Process Clause. Finally, Plaintiff asks the Court to mandate that the federal government develop a procedure for the Virgin Islands and its citizens to vote for President, register to run for President, register to run for Congressional office as a voting member, and to vote for those running for Congressional office as voting members.

## II.    LEGAL STANDARD

On a motion to dismiss for failure to state a claim, a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler*, 578 F.3d at 210–11. But, the court should disregard any conclusory allegations proffered in the complaint. *Id.* Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next determine whether the "facts alleged in the complaint are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). This requires more than a mere allegation of an entitlement to relief. *Id.* "A complaint has to 'show' such an entitlement with its facts." *Id.* A claim is only plausible if the facts pleaded allow a court reasonably to infer that the defendant is liable for the misconduct

4

alleged. *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). Facts suggesting the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

## III.    ANALYSIS

Plaintiff argues that his rights to vote for President, run for certain federal office, or to be represented by a voting-member of Congress have been denied on the basis of his race. In order to prevail on this claim Plaintiff must first establish that he has a right to vote for President or to be represented by a voting-member of Congress. There are two possible theories that Plaintiff could rely upon to establish this right. Under either theory, however, Plaintiff's claim fails as a matter of law. First, Plaintiff could establish that he has an individual right to vote for federal elective representatives pursuant to his status as a citizen. Courts, however, have consistently rejected the notion that individual citizens have a personal right to vote for President or to be represented by voting Members of Congress solely as a result of their status as an American citizen. Second, Plaintiff could establish that he has the above-stated rights as a citizen and resident of an area granted full statehood. But, the Virgin Islands have not been granted full statehood, and pursuant to the political question doctrine, this Court is without authority to grant statehood. For these reasons, Plaintiff's Complaint must be dismissed.

### A. Plaintiff Does Not Have an Individual Right to Vote for President or to be Represented by Voting Members of Congress

The fact that individual citizens do not have the right to vote for President and Vice President is well-established. In previously addressing the question of whether United States citizens residing in the Virgin Islands have a right to vote in presidential elections, this Court, in *Ballentine II*, noted that "[t]he Constitution does not grant the right to vote for President and Vice President to individual citizens, but to 'Electors' appointed by 'each state.'" *Ballentine II*,

5

2006 U.S. Dist. LEXIS 96631, at *5 (quoting U.S. CONST. art. II, § 1). More specifically, Article II of the federal Constitution provides: "Each <u>State</u> shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the <u>State</u> may be entitled in the Congress." U.S. CONST. art. II, § 1. "That the franchise for choosing electors is confined to 'states' cannot be 'unconstitutional' because it is what the Constitution itself provides." *Igartua de la Rosa v. United States*, 417 F.3d 145, 147 (1st Cir. 2005); *see also Attorney General of Territory of Guam v. United States*, 738 F.2d 1017, 1019 (9th Cir. 1984). Moreover, as the United States Supreme Court has stated, "[t]he individual citizen has no federal constitutional right to vote for electors for the President of the United States unless and until the <u>state</u> legislature chooses a <u>statewide</u> election as the means to implement its power to appoint members of the Electoral College." *Bush v. Gore*, 531 U.S. 98, 104 (2000) (emphasis added).

The Virgin Islands is not a state of the Union and therefore has no right to appoint electors. The consequence of this is "that citizens choosing to reside within its borders are not entitled to vote for electors even if they are denied a role in the selection of President and Vice-President." *Ballentine II*, 2006 U.S. Dist. LEXIS 96631, at *6; *see also Attorney General of Territory of Guam*, 738 F.2d at 1019.

It is also well-established that there is no individual right to be represented by a voting member of Congress. *See generally Ballentine II*, 2006 U.S. Dist. LEXIS 96631, at *7–10. Article I of the Constitution provides, in pertinent part, that "The House of Representatives shall be comprised of Members chosen every second Year by the People of the several <u>States</u> . . .[and that] No Person shall be a Representative . . . who shall not, when elected, be an Inhabitant of <u>that State</u> in which he shall be chosen." U.S. CONST. art. I, § 2. Moreover, "Representatives . . . shall be apportioned <u>among the several States which may be included in this Union</u>." *Id.* A

plain reading of the Constitution similarly limits the right to vote for, and to be represented by, United States Senators to resident citizens of a state. *Id.* § 3. Territory that has not been granted full statehood does not constitute a "state" for purposes of Article I. *See Adams v. Clinton*, 90 F. Supp. 2d 35, 48–49 (D.D.C. 2000) (three-judge panel) (District of Columbia not a "state" under Article I), *aff'd*, 532 U.S. 941 (2000); *see also Michel v. Anderson*, 817 F. Supp. 126, 140 (D.D.C. 1993), *aff'd*, 14 F.3d 623, 625 (D.C. Cir. 1994); *Ballentine II*, 2006 U.S. Dist. LEXIS 99631, at * 7–10.

The Court is not free to ignore these structural aspects of the voting procedure for President or members of Congress established by the Constitution at the altar of either the Equal Protection or Due Process Clause. In other words, the Court cannot grant voting rights to an American citizen based upon a violation of either the Fifth or Fourteenth Amendment that would be in direct contradiction to the structural aspects of the voting procedure established in Articles I and II of the Constitution. Similarly, the Court cannot grant representation by voting-members of Congress to American citizens residing in unincorporated territory, because to do so would be in direct opposition to the strictures of Article I. This is true regardless of whether Plaintiff's equal protection or due process rights might otherwise be violated. "The Constitution is, in the end, a unitary, cohesive document and every time any piece of it is ignored or interpreted away in the name of expedience, the entire fragile endeavor of constitutional government is made that much more insecure." *Colgrove v. Battin*, 413 U.S. 149, 187 (1973) (Marshall, J., dissenting). Thus, Plaintiff cannot establish that he has an individual right to vote for President or to be represented by a voting-member of Congress.

7

## B. Plaintiff Cannot Establish That He is a Resident of a State

The *Insular Cases*[3] established "the doctrine of territorial incorporation, under which the
Constitution applies in full in incorporated Territories surely destined for statehood but only in
part in unincorporated Territories." *Boumediene v. Bush*, 553 U.S. 723, 578 (2008) (citations
omitted). The practical significance of these cases, however, extended far beyond the question
of whether certain constitutional rights had to be afforded to citizens living in certain geographic
areas. What these cases sanctioned and enabled was a system of American imperialism, under
which the United States could own and hold territory that it never intended to fully incorporate
into the Union. Plaintiff spends a considerable portion of the Complaint discussing the alleged
racist underpinnings of the *Insular Cases*, and he asks this Court to reject their continuing
validity. The Court, however, cannot ignore the established doctrine of territorial incorporation,
and even if it could, Plaintiff would still be unable to establish a viable claim as a matter of law.

Plaintiff first asks the Court to reject the continuing validity of the *Insular Cases*.
Affording Plaintiff's Complaint a broad reading, it appears that his theory of this case is that,
because the *Insular Cases* are no longer valid law the United States no longer has the authority
to hold the Virgin Islands as an unincorporated territory. As a consequence, Plaintiff apparently
contends, the Virgin Islands must be afforded statehood.[4] As discussed above, only after
establishing these baseline contentions would Plaintiff be able to prove that he has a right to vote
in Presidential elections or be represented by a voting-member of Congress. And only after
establishing that he has a right to vote for President or to be represented by an Article I
Congressional representative can Plaintiff establish that these rights were denied on the basis of
race. This, of course, is a difficult path to ascend.

---

[3] The *Insular Cases* consist of a set of twenty-three cases decided by the Supreme Court between 1901 through
1922. *See Ballentine I*, 2001 U.S. Dist. LEXIS 16856, at *19 n.11 (collecting cases).
[4] The Court notes that Plaintiff never explicitly states that he seeks to have Virgin Island statehood recognized, but it
the logical consequence of the relief that he seeks.

8

The Court cannot accept Plaintiff's invitation to reject the holdings of the *Insular Cases*. First, and most obviously, this Court is bound by decisions of the Supreme Court and does not have the independent authority to question those decisions. Plaintiff makes no attempt to differentiate the facts of this case from other cases applying the doctrine of territorial incorporation or to otherwise show why this doctrine does not apply here. Second, as recently as 2008, the Supreme Court implicitly reaffirmed the continuing validity of the *Insular Cases*. *See id.* at 758 (stating that "[i]t may well be that over time the ties between the United States and any of its unincorporated Territories strengthen in ways that are of constitutional significance" (citations omitted)); *see also id.* at 764 (refusing to read *Johnson v. Eisentrager*, 339 U.S. 763 (1950) as a repudiation of the *Insular Cases*).

Were the Court to reject the continued validity of the *Insular Cases*, the likely result would be that the United States would have to hold the Virgin Islands as an incorporated territory—i.e., one destined for statehood—or to relinquish ownership of the Virgin Islands. Even assuming *arguendo* that the United States could be forced to hold the Virgin Islands as an incorporated territory that is destined for statehood, this Court does not have the authority to grant statehood itself. The logical consequence of this is that the Court does not have the authority to grant Plaintiff, solely as a result of his citizenship and residence in the Virgin Islands, the right to vote for President or to be represented by voting-members of Congress.

In accordance with the political question doctrine, certain cases present questions that are non-justiciable in the federal courts. A political question is present, and therefore a case is non-justiciable, when a concern over the separation of powers between coordinate branches of government is so inextricably intertwined to the case at hand that a judicial forum would be an inappropriate place for resolution of that issue. *See Baker v. Carr*, 369 U.S. 186, 217 (1962). Most relevant to this case, a political question exists where there is "a textually demonstrated

9

constitutional commitment of [an] issue to a coordinate political department . . . ." *Id.* Article

IV, section three of the Constitution explicitly provides that "New States may be admitted by the

Congress into this Union." U.S. CONST. art. IV, § 3 (emphasis added). Thus, our founders

determined that it is for Congress—not the courts—to decide whether the Virgin Islands should

be granted statehood. *Cf. Jones v. United States*, 137 U.S. 202, 212 (1890) ("Who is the

sovereign, de jure or de facto, of a territory is not a judicial, but a political question, the

determination of which by the legislative and executive departments of any government

conclusively binds the judges, as well as all other officers, citizens and subject of the

government."). As a result, only Congress can determine whether the citizens of the Virgin

Islands, including Plaintiff, should be afforded the right to vote for President or to be represented

by voting-members of Congress. Because the Court does not have the authority to grant the

relief requested by Plaintiff, the Complaint must be dismissed.

## C. Plaintiff's Complaint Must Be Dismissed Because It Does Not Allege Any Wrongful Act By Any of the Defendants

Finally, there is one additional reason why Plaintiff's Complaint must be dismissed. The

Complaint does not allege any specific wrongdoing by any of the named Defendants. The only

mention of the Defendants in the Complaint can be found in one sentence, which reads:

"Defendants are agencies and instrumentalities of the government of the United States of

America." (Compl. ¶ 3). Plaintiff has therefore failed to state a claim upon which relief can be

granted within the meaning of Federal Rule of Civil Procedure 12(b)(6) and the Supreme Court's

decision in *Iqbal*, 556 U.S. 662.

10

## IV.    CONCLUSION

For all of the reasons stated above, the Defendants' Motions will be granted and

Plaintiff's Complaint will be dismissed.  An appropriate Order will follow.


_/s/ Anne E. Thompson_
ANNE E. THOMPSON, U.S.D.J.


Date: August 16, 2012